UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
THOMAS McMANAMON,                                  :
                                                   :            11 Civ. 7610 (PAE)
                                   Plaintiff,       :
                                                   :            OPINION & ORDER
            -v-                                     :
                                                   :
ERIC K. SHINSEKI, Secretary of Veterans Affairs,   :
                                                   :
                                   Defendant.       :
                                                   :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Thomas McManamon ("McManamon") sues defendant Eric K. Shinseki,

Secretary of Veterans Affairs ("defendant"), alleging that the Department of Veterans Affairs

unlawfully discriminated against him on the basis of his age and perceived disability in failing to

hire him, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*; the

Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York

City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 *et seq.*

        Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to

state a claim.  For the reasons set forth below, the motion is granted.

I.    **Background**

A.  **Facts**[1]

McManamon, age 51, is an honorably-discharged veteran of the United States Air Force. Am. Compl. 6, 8.  In December 2002, he voluntarily entered "alcohol detox" for a period of two weeks.  *Id.* at 6–7.

Since then, McManamon has been unsuccessful in obtaining certain jobs at the Department of Veterans Affairs ("VA"), despite his "high level of competency in technology." *Id.* at 7.  In June 2006, McManamon contacted the Brooklyn VA hospital to notify them that he was having difficulty finding employment and to ask for help.[2]  *Id.* at 7.  McManamon then accepted a "laborer job" from the VA—"[t]he only thing that was available"—but resigned approximately three months later because that position "clearly wasn't a fit" based on his "background in technology and management."  *Id.* at 7.

McManamon then obtained employment at the U.S. Census Bureau ("Census Bureau"), first as an "Assistant Manager of Technology" and then "I.T. Specialist," posts he held between November 2008 and November 2010.[3]  *Id.*  In September 2010, McManamon sent a letter to Martina Parauda, whom the Amended Complaint describes as the Director for the Manhattan and Brooklyn VA hospitals, in which he stated that he was seeking work in the technology field because his contract with the U.S. Census Bureau was ending, but was being stigmatized for

---

[1] The facts related herein are drawn from McManamon's Amended Complaint, Dkt. 5 ("Am. Compl.").

[2] During the time between his stay in detox and June 2006, McManamon "worked several jobs outside [his] field to make ends meet."  Am. Compl. 7.

[3] McManamon alleges that his contract with the Census Bureau covered November 2008 through November 2010.  Am. Compl. 7.  According to a laudatory letter of recommendation from McManamon's supervisor at the Census Bureau that is attached to the Amended Complaint, McManamon's contract expired "due to the Census project being completed."  *Id.* at 13.

having undergone alcohol treatment in 2002.  *Id.* at 6.  According to the Amended Complaint, McManamon's medical records erroneously stated that he had been arrested 57 times, and contained "other erroneous derogatory info"; although "that mistake was corrected, the stigma continued."  *Id.*

In October 2010, McManamon was referred to Deborah Innella, the head of human resources for the VA hospitals.  *Id.*  Two months later, McManamon was interviewed by Maria Schay, Chief of Technology at the VA hospitals.  *Id.*  But, McManamon alleges, in February and March 2011, he "was not among the most highly qualified candidates to be referred to the hiring agency (The Brooklyn VA hospital) for the job of I.T. Specialist," although Schay, after the December 2010 interview, had been "ready to hire [him] for the job of I.T. Specialist."  *Id.*

On March 29, 2011, McManamon claims that he filed an "EEOC complaint."[4]  *Id.*  On April 4, 2011, he filed a civil action in this Court under 42 U.S.C. § 1983, complaining that his potential employers were not recognizing his federal work and military experience and his volunteer work, and also that he was being stigmatized for having spent time in alcohol treatment.  *See McManamon v. Dep't of Veterans Affairs*, No. 11 Civ. 2492 (LAP), Dkt. 2.  That action was transferred to the Eastern District of New York, *see* Dkt. 4, and dismissed there without prejudice.[5]  *See McManamon v. Dep't of Veterans Affairs*, No. 11-CV-2820 (RRM)(JO), 2011 WL 3423346, at *3 (E.D.N.Y. Aug. 4, 2011).

---

[4] Unlike McManamon's later EEOC complaint, *see infra* p. 4, the EEOC reports that there is no record of McManamon's March 29, 2011 complaint.  *See* Dkt. 16 (Declaration of Robert Moran in Support of Motion to Dismiss ("Moran Decl.")) ¶ 8.  Nevertheless, the Court assumes the truth of its having been filed, for the purpose of resolving this motion to dismiss.

[5] The district court in that case granted McManamon leave to file an amended complaint under the Rehabilitation Act and to specify that he had exhausted his administrative remedies.  *Id.*  McManamon thereafter informed the court that he intended to file another civil action after he

In June 2011, McManamon alleges, he interviewed for the position of "I.T. Specialist GS-11 for the Manhattan VA hospital." Am. Compl. 6.  He was not hired.  *Id.*  By that point, McManamon appears to allege, he *was* "on a certified list" and had been "referred to the agency." *Id.*

On August 26, 2011, McManamon contacted the VA's Office of Resolution Management and complained that he had not been hired because of his perceived disability, his age, and his prior EEOC complaints.  *See* Moran Decl. ¶ 3; *id.* Ex. A, at 5–7.[6]  On September 23, 2011, McManamon filed a formal Complaint of Employment Discrimination.  Moran Decl. Ex. A, at 33–36.

McManamon alleges that the VA "lied to [him] to stall for time" by leading him "to believe they were going to hire [him]." Am. Compl. 8.  In fact, he alleges, he had been "blacklisted," because of his prior alcohol treatment and his age.  *Id.* at 7.

**B.  Procedural History**

On October 21, 2011, McManamon filed the initial Complaint in this action.[7]  Dkt. 2.  It alleged, in essence, that the VA's failure to hire him was due to his age, his earlier alcohol treatment, and/or his having complained about discriminatory practices at the VA.

On December 8, 2011, this Court dismissed McManamon's ADA, NYSHRL, and NYCHRL claims with prejudice because those statutes do not provide relief for disability or age discrimination in an action brought by a federal employee against a federal agency.  *See* Dkt. 4

had received a right to sue letter based on another EEOC complaint he had since filed, on August 26, 2011.  The court thereupon dismissed McManamon's case without prejudice.  *Id.*

[6] "Moran Decl. Ex. A" refers to a copy of the VA Office of Resolution Management's file related to complaints filed by McManamon.

[7] On November 28, 2011, the VA Office of Resolution Management issued a Final Agency Decision, dismissing McManamon's discrimination complaint.  Moran Decl. Ex. A, at 46–48.

("Order to Amend") (citing *Rivera v. Heyman*, 157 F.2d 101, 103 (2d Cir. 1988); *Garvin v. Potter*, 367 F. Supp. 2d 548, 560 (S.D.N.Y. 2005); *Shaw v. U.S. Postal Serv.*, No. 09 Civ. 6617 (DAB)(HBP), 2010 WL 3749233, at *12 (S.D.N.Y. Aug. 10, 2010) (Report & Recommendation)).  However, in that order, the Court, recognizing McManamon's status as a *pro se* plaintiff, granted McManamon leave to amend his complaint to include disability discrimination claims under the Rehabilitation Act,[8] Order to Amend 3–4; directed him to amend his complaint to indicate whether he had exhausted his administrative remedies by receiving a decision from the Department of Veterans Affairs before filing the action, *id.* at 5–6; and dismissed all individual defendants named in the Complaint, granting him leave to name in his Amended Complaint "the only proper defendant" in such a case, the Secretary of Veterans Affairs (*i.e.*, Shinseki), *id.* at 4–5.

On January 3, 2012, McManamon filed the Amended Complaint.  Dkt. 5.  Accordingly, the only extant claims are brought under Title VII, the ADEA, and the Rehabilitation Act.

On January 22, 2013, defendant filed a motion to dismiss the Amended Complaint, Dkt. 14, and a memorandum of law in support of that motion, Dkt. 15 ("Def Br.").  On January 30, 2013, McManamon submitted his opposition to the motion.  Dkt. 19 ("McManamon Br.").  On February 5, 2013, defendant filed a letter-motion replying to McManamon's opposition and requesting, having received agreement from McManamon, that the Court stay discovery pending resolution of the motion to dismiss.  Dkt. 21.  On May 29, 2013, the case was reassigned to my docket.

---

[8] The order explained that, because "this Court's Amended Complaint for Employment Discrimination form does not include a checkbox option for a Rehabilitation Act claim, Plaintiff should indicate that he is pursuing such a claim somewhere in the Amended Complaint if he chooses to pursue this claim."  Order to Amend 4.  McManamon's Amended Complaint does not so indicate.  *See generally* Am. Compl.

## II.    Discussion

### A.  Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege facts that, accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A complaint is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555.  The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*  The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

"*Pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 79, 75 (2d Cir. 1996)). Nonetheless, a court "should not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard." *Henry v. Davis*, No. 10 Civ. 7575 (PAC)(JLC), 2011 WL 3295986, at *2 n.5 (S.D.N.Y. 2011) (Report & Recommendation) (*citing Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

### B.  Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or . . . to limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. §§ 2000e-2(a)(1)–(2). McManamon asserts claims under Title VII for discrimination and retaliation.

### 1.  McManamon's Title VII Discrimination Claim

To establish a *prima facie* case for a failure-to-hire claim under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position he seeks; (3) he was rejected from that position; and (4) after that rejection, the employer continued to seek applicants from persons with the same qualifications as the plaintiff, or that the rejection occurred under circumstances that gave rise to an inference of discrimination in some other way. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Ghosh v. N.Y.C Dep't of Health*, 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006); *see also Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).  To survive a motion to dismiss, a plaintiff need not specifically plead every element of a *prima facie* case.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515 (2002); *Trachtenberg v. N.Y. C. Dep't of Educ.*, 12 Civ. 7964 (PAE), 2013 WL 1335651, at *3 (S.D.N.Y. Apr. 3, 2013); *Wilson v. N.Y. C. Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).  The elements of

a *prima facie* case do, however, "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of N.Y.*, No. 09 Civ. 5916 (LTS)(KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).  Courts therefore "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).  A claim is subject to dismissal where the plaintiff "fail[s] to plead any facts that would create an inference that any adverse action taken by . . . [any] defendant was based upon [a protected characteristic of the plaintiff.]"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (citation omitted) (first two alterations in original).

McManamon's claim under Title VII falls far short.  The Amended Complaint alleges that McManamon was not (1) referred to the VA from a list of highly qualified candidates in February and March 2011, nor (2) hired as an I.T. Specialist by the VA on July 25, 2011, because he was stigmatized for his alcohol treatment in 2002 and his age.  But the Amended Complaint fails to allege even the first required element of a Title VII claim:  that McManamon was discriminated against on the basis of any characteristic that Title VII protects—race, color, religion, gender, or national origin.  Nowhere does the Amended Complaint mention any of these characteristics, let alone allege facts indicating that McManamon suffered an adverse employment action because of any of them.  A history of having undergone alcohol treatment is not protected by Title VII, nor is age, although the latter is the subject of a separate statute, the ADEA.  *See infra* pp. 10–13.  Because discriminatory conduct is actionable under Title VII "only when it occurs because of an employee's . . . protected characteristic," McManamon's Title VII discrimination claim must be dismissed.  *Patane*, 508 F.3d at 112.

### 2.  McManamon's Title VII Retaliation Claim

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000(e)-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he or she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Reed v. A.W. Lawrence & Co., Inc*., 95 F.3d 1170, 1178 (2d Cir. 1996).  "Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee for opposing any practice made unlawful by Title VII."  *Riviera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 698 (2d Cir. 2012).  A plaintiff engages in activity protected by Title VII "by opposing a practice made unlawful" by the statute.  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp*., 136 F.3d 276, 292 (2d Cir. 1998).  Implicit "is the requirement that [the defendant] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  *Id*. at 292.

As noted, the Amended Complaint does not mention race, color, religion, gender, or national origin—the characteristics protected by Title VII.  It follows that McManamon does not allege that he was engaged in activity protected by Title VII.  Instead, he claims that the VA failed to hire him in "[r]eprisal to [his] prior EEOC complaint filed on [March 29, 2011] and [his] federal civil complaint filed on [April 4, 2011] for employment discrimination."  Am. Compl. 6.  McManamon has neither attached this EEOC complaint to his Amended Complaint,

nor specified its contents, nor even described its claims or factual allegations.[9]  McManamon's opposition to defendant's motion to dismiss states that he can prove through "copies of emails and the receipt" that he filed this complaint.  McManamon Br. 4.  But even accepting as true the fact of an EEOC complaint, McManamon fails to plead that that complaint alleged discrimination on the basis of race, color, religion, gender, or national origin, such that the defendant could have reasonably understood McManamon to have complained of conduct prohibited by Title VII.  And McManamon's April 2011 lawsuit made no such allegation: Instead, in seeking relief under § 1983, it alleged that the VA failed to consider his federal work experience, military experience, and volunteer activities, and held his "alcohol detox" against him.

The Title VII retaliation allegation in the Amended Complaint therefore must be dismissed, because it does not allege that McManamon ever engaged in protected activity by "challenging employment practices that, if proven, were unlawful under Title VII," *Kessler v. Westchester Cnty. Dep't. of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006), let alone that he was retaliated against for such activity.  The motion to dismiss the retaliation claim is, therefore, granted.

### C.  ADEA

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

---

[9] Defendant represents that it is unable to locate a record of a March 29, 2011 complaint by McManamon.  Moran Decl. ¶ 8.

### 1.  McManamon's ADEA Discrimination Claim

McManamon claims he "was discriminated [against] . . . for being over the age of 40." Am. Compl. 7.  To establish a *prima facie* case of age discrimination, a plaintiff must show that he or she (1) is within the protected age group; (2) was qualified for the position; and (3) suffered an adverse employment action under circumstances supporting an inference of age discrimination.  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (*citing Galabya v. N. Y. C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)).  As with his Title VII claim, at this pleading stage McManamon is not required to demonstrate every element of a *prima facie* case of age discrimination.  *See Swierkiewicz*, 534 U.S. at 512; *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 194 (E.D.N.Y. 2010) ("[A] complaint in an ADEA case need not allege specific facts that establish a *prima facie* case of discrimination.").  To survive the motion to dismiss, however, the Amended Complaint must "plausibly plead . . . that the circumstances surrounding an adverse employment action give rise to an inference of age discrimination."  *Wolf v. Time Warner, Inc.*, No. 09 Civ. 6549 (RJS), 2012 WL 4336232, at *10 (S.D.N.Y. Sept. 17, 2012); *see also Holmes*, 745 F. Supp. 2d at 195 ("Although a plaintiff need not plead facts to establish a *prima facie* case of employment discrimination in order to survive a motion to dismiss, the court considers the elements of a *prima facie* case in determining whether there is sufficient factual matter in the Complaint which, if true, give Defendant[s] fair notice of Plaintiff[s'] employment discrimination claims and the grounds on which such claims rest." (citation omitted) (alterations in original)).

The Amended Complaint alleges that McManamon is today age 51 and in July 2011 was not hired for the position of "I.T. Specialist GS-11"; it sufficiently pleads membership in the

protected class and that McManamon experienced an adverse employment action.  Am. Compl. 6.  It also adequately pleads McManamon's qualifications for the job, stating that he has a "high level of competency in technology," *id.* at 7; detailing some of his credentials, *id.*; and attaching favorable letters of recommendation as exhibits, *id.* at 11–13.  The Amended Complaint fails, however, to meet the third prong of the test for discrimination under the ADEA:  It fails to plead any facts that, if assumed true, connect the alleged discriminatory conduct to McManamon's protected characteristic or support an inference of age discrimination.  In fact, beyond stating that McManamon is 51, the Amended Complaint does not mention age at all; it falls far short of plausibly pleading that the VA's failure to hire McManamon was in any way related to his age.

Amplifying on this point, defendant notes that McManamon has not alleged "that any individual involved in the hiring decision was even aware of his age, let alone that a younger individual was hired for the position he sought or that the defendant continued seeking applicants for the position after it failed to hire him."  Def. Br. 11–12.  In response, McManamon states that "[j]ust by my experience alone, the interviewer knows approximately how old I am.  Just by the internet alone, everyone knows just about everything about you today."  McManamon Br. 4.  But these bare, conclusory allegations lack any "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that defendant did not hire McManamon *because of* his age.  Put another way, the Amended Complaint "pleads facts that are merely consistent with [the] defendant's liability," but "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 67.  The Amended Complaint offers no facts that link the fact that McManamon was not hired to his age.

Because McManamon does not state a plausible claim that he was not hired as a result of his age, his ADEA discrimination claim is dismissed.

### 2.  McManamon's ADEA Retaliation Claim

The ADEA "prohibits an employer from discriminating against an individual employee because of the individual's opposing any practice made unlawful under the statute." *Kassner*, 496 F.3d at 241; *see also* 29 U.S.C. § 623(d).  To state an ADEA retaliation claim, a plaintiff must allege that (1) he or she engaged in protected activity; (2) the defendant was aware of this activity; (3) the defendant took adverse action against him or her; and (4) a causal connection exists between the protected activity and the adverse action. *Kessler*, 461 F.3d at 205–06.

McManamon has not plausibly alleged that he engaged in activity protected by the ADEA, nor pled any facts demonstrating a causal connection between that activity and any adverse employment action.  As noted, McManamon claims that he filed an "EEOC complaint" on March 29, 2011 but he has not attached that complaint, described its contents, or alleged that that complaint contained, or related to, allegations of age discrimination.  Nor has McManamon alleged that his April 2011 § 1983 civil lawsuit complained of age discrimination.  Instead, as noted, the complaint in that lawsuit alleged that the VA had improperly failed to consider McManamon's work and military experience and stigmatized him for his alcohol treatment. Although McManamon purported to bring an ADEA claim, he did not allege age discrimination in that complaint and did not discuss age at all, beyond stating that "[a]t the age of 50 and soon to be 51 my chances of getting hired anywhere are difficult regardless of my qualifications." *See generally McManamon v. Dep't of Veterans Affairs*, No. 11 Civ. 2492 (LAP), Dkt. 2.

Bcause McManamon did not "oppos[e] a practice made unlawful by . . . the ADEA," he did not engage in protected activity under that statute. *Kessler*, 461 F.3d at 210.  And even if he had so alleged, the Amended Complaint does not allege any facts that suggest a causal connection between his complaints and the VA's failure to hire him.  On the facts as pled,

therefore, defendant could not have refused to hire McManamon for retaliatory reasons in violation of the ADEA.  The ADEA retaliation claim must, therefore, also be dismissed.

### D.  Rehabilitation Act

As noted, this Court dismissed McManamon's ADA, NYSHRL, and NYCHRL claims on December 8, 2011, because those statutes do not provide relief for a federal employee's claim against a federal agency.  However, the Court granted McManamon leave to amend to include a Rehabilitation Act claim for disability discrimination, and directed him to indicate whether he had exhausted his administrative remedies before filing suit.  The Court's order also directed McManamon to "indicate that he is pursuing such a [Rehabilitation Act] claim somewhere in the Amended Complaint if he chooses to pursue this claim."  Order to Amend 4.  On January 3, 2012, McManamon filed the Amended Complaint, but nowhere indicated that he is pursuing a Rehabilitation Act claim.  Nevertheless, out of solicitude for McManamon's status as a *pro se* litigant, this Court liberally construes the Amended Complaint to bring a claim for disability discrimination and retaliation under that statute.

The Rehabilitation Act prohibits discrimination based on disability.  It provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

### 1.  McManamon's Rehabilitation Act Discrimination Claim

The Amended Complaint alleges that McManamon was not hired for the I.T. Specialist position because of his "[p]erceived disability for time [he] spent in alcohol detox on December 6, 2002 for a total of 2 weeks."  Am. Compl. 6.  To establish a *prima facie* claim of discrimination under the Rehabilitation Act, a plaintiff must show that he or she (1) has a

disability for purposes of the Rehabilitation Act; (2) was "otherwise qualified" to perform the job denied to him or her; (3) was denied the job because of his or her disability; and that (4) the employer receives federal funds.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 313 (2d Cir. 2003); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994).

Defendant argues that McManamon has not plausibly alleged that the VA regarded him as having a mental or physical impairment, or that the individuals allegedly responsible for the decision not to hire him were even aware that he once participated in an alcohol rehabilitation program.  Def. Br. 14.  Defendant also argues that McManamon does not allege that a non-disabled individual was hired for the position he sought or that defendant continued to seek applications after failing to hire McManamon.  *Id.*  Nor does McManamon allege that any VA employee involved in the hiring decisions made any remarks that reflected a bias against individuals who have undergone an alcohol treatment program.  *Id.*  To be sure, to avoid dismissal at this stage, McManamon need not allege "specific facts establishing a *prima facie* case of discrimination."  *Swierkiewicz*, 534 U.S. at 508.  But the Amended Complaint must provide sufficient facts that, accepted as true, state a facially plausible claim for relief—it must provide more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Twombly*, 550 U.S at 554.

Addressing the required elements, the Amended Complaint does plead facts indicating that McManamon was qualified for the position.  It claims that he worked at the U.S. Census Bureau between November 2008 and November 2010, initially as an "Assistant Manager of Technology [before being] promoted to an I.T. Specialist at the NY regional center," that he worked at "Compuforce as an M.I.S. Director/Consultant," and that he completed a "refresher course in Oracle Database programming at Micro power systems" in October 2008, earning "a

4.0 grade."  Am. Compl. 7.  And, as noted, the Amended Complaint attaches three very positive letters of recommendation from employers at the U.S. Census Bureau and CompuForce.  *Id.* at 11–13.

However, the Amended Complaint fails to plausibly allege that McManamon is disabled under the Rehabilitation Act or was denied the job because of a disability.  A "disability" under the Rehabilitation Act includes (1) a physical or mental impairment that substantially limits one or more of [an] individual's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment.  29 U.S.C. § 794(a); *accord* 42 U.S.C. § 12102 (ADA provision); *see* 29 U.S.C. § 794(d) (providing that the standards for employment discrimination under the ADA shall generally be applied to claims under the Rehabilitation Act).  "Alcoholism, like drug addiction, is an impairment under the definitions of a disability set forth in . . . the Rehabilitation Act."  *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2d Cir. 2002).  However, more than a physical or mental impairment is required to satisfy the definition of disability: "[M]ere status as an alcohol or substance abuser does not necessarily imply a 'limitation' under the [Rehabilitation Act's] definition."  *Id*. at 47.  To qualify as disabled, the individual "must demonstrate not only that he . . . was actually addicted to drugs or alcohol in the past, but also that this addiction substantially limits one or more of his . . . major life activities."  *Id*.; *see also Weixel v. N.Y.C. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002).  McManamon has not alleged that his status as a recovering alcoholic substantially limits one of his major life activities, and thus has not plausibly pled a disability under the Rehabilitation Act.  To the contrary, he states that he has gone "over 9 years without drinking and [has] been doing a lot of volunteer service to help others with drinking problems."  Am. Compl. 8.  The Amended Complaint does not claim that McManamon is inhibited in any way by his former addiction to

alcohol, let alone that he is inhibited in performing major life activities. *Cf. Weixel*, 298 F.3d at 147–48 (plaintiff alleged a disability under the Rehabilitation Act where she pled facts showing she "was substantially disabled from the major life activities of walking, exerting herself, and attending school" by chronic fatigue syndrome and fibromyalgia.)

Furthermore, the Amended Complaint does not plead facts indicating that McManamon was not hired *because of* that disability.  McManamon alleges that, in 2002, he underwent alcohol treatment lasting two weeks, but does not allege facts showing that that circumstance played any role in the VA's decision not to hire him in July 2011 or that defendant even viewed McManamon as suffering from a disability.  Of the two individuals McManamon claims were responsible for the decision not to hire him, McManamon alleges that one knew of his alcohol treatment in 2002.  He avers that "Veronica Foy/Associate Director in charge of personnel for both Manhattan and Brooklyn campuses is the person that made the final decisions on my not getting hired for these jobs due to the fact that I was in the alcohol detox and erroneous assessments of my character."  Am. Compl. 6.  In his opposition brief, McManamon adds that "it is a fact that Veronica Foy . . . knew I was in alcohol detox," and that other individuals at the VA knew that information as well.  *See* McManamon Br. 3 ("In fact I broke my own confidentiality at that point since it was an issue."); *see also id.* at 4 ("I guarant[ee] none of [Deborah Inella, Veronica Foy, Tammy Mui, Maria Schay, and Martina Parauda] will say they didn't know I was in an alcohol detox at the Brooklyn VA hospital because I can prove otherwise.").  However, McManamon pleads no facts beyond that those persons knew that he had undergone alcohol treatment, and thus no facts that plausibly allege that it was a reason he was not hired.  Such pleadings are insufficient "to raise a right to relief about the speculative level." *Twombly*, 550 U.S at 554.  Nor does the Amended Complaint supply facts that make the inference reasonable,

as opposed to speculative, that Foy's (or anyone else's) decision not to hire him was influenced by this perceived disability.  Because McManamon fails adequately to plead a disability or facts that could give rise to an inference that defendant did not hire him because of his perceived disability, his Rehabilitation Act discrimination claim must be dismissed.

### 2.  McManamon's Rehabilitation Act Retaliation Claim

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he or she was engaged in protected activity; (2) the retaliating party was aware that the plaintiff had engaged in protected activity; (3) an adverse decision or course of action was taken against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  *Weixel*, 287 F.3d at 148.  A complaint that makes only general statements that the defendant retaliated against the plaintiff but does not supply factual detail describing the specific retaliatory acts, when they occurred, and which employees were aware of any protected activity or were actually involved in retaliatory conduct, is insufficient to withstand a motion to dismiss.  *See Saidin v. N.Y. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007).

Defendant argues that McManamon fails to allege facts showing a causal connection between any protected activity and defendant's failure to hire him, or that any individual who participated in the decision not to hire McManamon was aware that he had engaged in protected activity.  Def. Br. 17.  To constitute protected activity, a complaint must be "sufficiently pointed to be reasonably understood as a complaint of discrimination" and the plaintiff must "possess a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 165 (DLC), 2008 WL 4449386, at *6 (S.D.N.Y. Sept. 29, 2008); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  As noted, McManamon does not allege that the "EEOC complaint" he claims to have filed on March 29,

2011 set forth any allegations of perceived discrimination on the basis of a disability.  The

§ 1983 civil action he filed on April 4, 2011, however, complained that the VA had failed to hire

him in part based on a stigma arising from "[his] time in the alcohol detox more than 8 years

ago."  *McManamon v. Dep't of Veterans Affairs*, No. 11 Civ. 2492 (LAP), Dkt. 2, at 3.  In the

"relief" section of the complaint, McManamon asked that the court "[t]ake away the erroneous

stigma placed on [his] character for the time [he] spent at the alcohol detox."  *Id.* at 4.  Although

"ambiguous complaints that do not make the employer aware of alleged discriminatory

misconduct do not constitute protected activity," *Int'l Healthcare Exch., Inc. v. Global

Healthcare Exch.*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007), when McManamon's civil

complaint is read in the light most favorable to him, those allegations put defendant on notice

that McManamon believed that he was being discriminated against on the basis of his perceived

disability.  Accordingly, McManamon sufficiently alleges that he engaged in protected activity

under the Rehabilitation Act when he commenced the § 1983 action in April 2011.  McManamon

has thus satisfied the first prong of such a retaliation claim.

McManamon's allegations that defendant was aware of his protected activity are for the

most part vague and conclusory.  The Amended Complaint alleges that the "Brooklyn VA . . .

[is] retaliating against [him] for speaking out" and that he "was discriminated [against in] . . .

retaliation for [his] previous complaints."  Am. Compl. 7–8.  It  does, however, allege that the

two individuals who allegedly made the decision not to hire him, Veronica Foy and Tammy Mui,

were aware of his protected activity.  McManamon states that Veronica Foy made the "final

decisions on [him] not getting hired" and "has blacklisted [him] . . . where [he] will never be

hired as a federal employee."  *Id.* at 6–7.  McManamon also adds that Tammy Mui failed to

prepare him for his job interview for the I.T. Specialist position which was "retaliation based on

[his] previous complaint against veteran's affairs. To say no one knew about that would be ludicrous." McManamon Br. 4. Although these allegations are vague and conclusory, at this stage, given the solicitude appropriate for review of a *pro se* plaintiff's pleadings, McManamon has adequately pled that the retaliating party was aware that he had engaged in protected activity. He has therefore satisfied the second prong of a *prima facie* case of retaliation.

McManamon further alleges that he experienced an adverse employment action when he was not hired for the I.T. Specialist position. S*ee Lovejoy-Wilson v. NOCO Motor Fuel, Inc*., 263 F.3d 208, 223 (2d Cir. 2001) (stating in context of a Title VII retaliation claim that adverse actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"); *see also Burlington*, 548 U.S. at 57 (an adverse employment action must be "materially adverse to a reasonable employee or job applicant").

At the fourth prong, however, McManamon's claim of retaliation falls short. A plaintiff must allege facts that could establish a causal connection or link between his or her protected activity and the adverse action. *See Kessler*, 461 F.3d at 205–06; *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (affirming dismissal of retaliation claim where plaintiff failed to allege facts supporting an inference of a causal connection). At this stage, McManamon is not required to provide evidence of such a connection, but he must plead facts that indicate an ability to do so. A plaintiff can plead a causal connection directly, by alleging facts of a retaliatory animus against him or her; or indirectly, either by showing a temporal relationship in which the protected activity was followed closely in time by discriminatory treatment, or by other circumstantial evidence. *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010); *see also Treglia*, 313 F.3d at 720 ("[A] close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.")

McManamon's bare assertions of retaliation and "reprisal," however, are insufficient to show that defendant had any retaliatory animus against him to render his retaliation claim plausible.  Therefore, McManamon must rely on temporal proximity (or other circumstantial evidence, of which he provides none) to state a retaliation claim.  There is no bright-line rule for when an alleged retaliatory action is too attenuated from protected activity to be considered causally linked.  *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  But a plaintiff who relies solely on "mere temporal proximity between protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case" must plead that the events were "very close" in time.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).  "District courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); *see also Garrett v. Garden City Hotel., Inc.*, No. 05–CV–0962 (JFB)(AKT), 2007 WL 1174891, at *20–21 (E.D.N.Y. Apr. 19, 2007) (two and one half months too remote to establish causation); *Ruhling v. Tribute Co.*, No. CV 04–2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line." (citation omitted)); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (three months too remote).

Here, McManamon filed the civil action on April 4, 2011 and experienced an adverse employment action three and a half months later on July 25, 2011, outside of the acceptable limit

for establishing temporal proximity to show a causal relationship.  Further detracting from any inference of retaliation is the fact that McManamon obtained a position on the "certified list" and was interviewed for his desired position in June 2011—*after* the April 4, 2011 civil action— whereas in "February and March 2011, [he] was not among the most highly qualified candidates to be referred to the hiring agency" and was not called in for an interview previously.  Am. Compl. 6.  As defendant points out, it thus appears that McManamon progressed further along in the hiring process after engaging in protected activity than he had before.  That fact is "inconsistent with an inference of retaliation."  Def. Br. 17.  *Cf. Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Accordingly, McManamon has failed to plead a connection between his protected activity and any adverse action.  Viewing McManamon's allegations in the light most favorable to him, the Court holds that he has not sufficiently pled that defendant did not hire him because he engaged in activity protected by the Rehabilitation Act.  Accordingly, McManamon's retaliation claim under the Rehabilitation Act must be dismissed.

### E.  McManamon's Defamation Claim

In the Statement of Claim section of the Complaint for Employment Discrimination form that McManamon has submitted with his Amended Complaint, he checked the box for "[o]ther acts" and inserted the claim of "[d]efamation of [his] character."  Am. Compl. 5.  McManamon states that "[t]he medical records and assessments to [his] character were false and derogatory" and that defendant "ha[s] defamed [McManamon's] character."  Am. Compl. 7–8.  To the extent

McManamon seeks to bring a defamation claim against defendant, his claim is dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

McManamon's defamation claim against defendant Shinseki, Secretary of Veterans Affairs, in his official capacity, is considered a tort claim against the United States. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963). Tort claims against federal officers in their official capacity are barred under the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b)(1). The limited waiver of sovereign immunity under the Act for specified common law torts explicitly excludes defamation claims. *See* 28 U.S.C. § 2680(h).

Because this Court lacks jurisdiction over a defamation claim against the United States, McManamon's claim against defendant is hereby dismissed.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss McManamon's discrimination and retaliation claims under Title VII, the ADEA, and the Rehabilitation Act is granted. Defendant's motion to dismiss McManamon's defamation claim is also granted. To the extent that defendant moves to stay discovery, *see* Dkt. 21, that motion is denied as moot.

The Clerk of Court is directed to terminate the motion at docket number 14, and to close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: July 9, 2013
         New York, New York

Paul A. Engelmayer
United States District Judge